**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DARCIE KANAGA, *Individually and as the Administrator of the Estate of* GLENN KANAGA, | ) ) ) ) | CASE NO. 1:25-cv-2786 |
| Plaintiffs, | ) ) ) | CHIEF JUDGE SARA LIOI |
| vs. | ) ) ) | **MEMORANDUM OPINION AND ORDER OF REMAND** |
| MONSANTO COMPANY, *et al.*, | ) ) ) | |
| Defendants. | ) | |

This matter comes before the Court on the motion to remand (Doc. No. 14 (Amended Motion to Remand))[1] of plaintiff Darcie Kanaga ("Mrs. Kanaga"), individually and as the administrator of the estate of Glenn Kanaga ("Mr. Kanaga" and, collectively with Mrs. Kanaga, "plaintiffs"), defendant Monsanto Company's ("Monsanto") opposition thereto (Doc. No. 24 (Opposition)), and plaintiffs' reply. (Doc. No. 27 (Reply).) For the reasons stated below, the motion is GRANTED, and this case is REMANDED.

This case involves claims under Ohio law brought by Ohio plaintiffs against three companies, two of which are organized under the laws of Ohio. Monsanto argues that this Court can disregard the Ohio citizenship of defendants Scotts Miracle-Gro Company ("Scotts") and Dunn Hardware, LLC ("Dunn") under the doctrine of fraudulent joinder. But fraudulent joinder

---

[1] Plaintiffs filed an earlier motion to remand. (Doc. No. 10.) That motion was denied as moot after plaintiffs expressed their intention to only move forward on the amended motion to remand. (02/27/2026 Minutes of proceedings [non-document]; 02/27/2026 Order [non-document].)

does not apply where a plaintiff states at least one colorable claim against at least one non-diverse defendant. That is precisely the case here. As discussed below, plaintiffs set forth a colorable claim against Dunn. Because Dunn shares Ohio citizenship with plaintiffs, this Court lacks diversity jurisdiction—the sole basis upon which Monsanto removed to this Court. (*See* Doc. No. 1 (Notice of Removal), at 3[2]; Doc. No. 16 (Amended Notice of Removal), at 3.) The Court must remand.

## I.    BACKGROUND

On a motion to remand, the Court looks to the pleadings and facts as they stood at the time of removal. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007); (*see also* 02/27/2026 Minutes of proceedings [non-document] ("The parties agreed that the Court's analysis on the amended motion to remand will look to the pleadings and facts as they existed at the time of removal.").) Accordingly, the following comes from the original complaint (Doc. No. 1-2 (Complaint)), the original notice of removal (Doc. No. 1), and the factual materials submitted as they pertain to the facts at the time of removal.

### A.  Factual Background

Plaintiffs are both Ohio residents. (Doc. No. 1-2 ¶ 5.) Monsanto is a Delaware corporation, with a principal place of business in St. Louis, Missouri. (*Id.* ¶ 8.) Scotts[3] is an Ohio corporation. (*Id.* ¶ 14.) Dunn is an Ohio limited liability company. (Doc. No. 24-6 (Stadlin Decl.), at 5; *see* Doc. No. 1-2 ¶ 13.)

From 1980 through 2015, Mr. Kanaga worked in landscaping and regularly used the

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[3] Scotts has been dismissed from the case under Fed. R. Civ. P. 21. (Doc. No. 19 (Order of Dismissal).) But because the remand analysis looks to the pleadings as they existed at the time of removal, *Gentek Bldg. Prods., Inc*, 491 F.3d at 330, the Court includes Scotts to the extent necessary to properly contextualize the factual background.

herbicide known as Roundup. (Doc. No. 1-2 ¶¶ 21–23.) Roundup is a glyphosate-based herbicide designed and produced by Monsanto. (*Id.* ¶¶ 36–38; *see also* Doc. No. 1, at 2 (". . . when Monsanto first introduced a Roundup-branded herbicide . . . ).) Scotts marketed and distributed Monsanto's Roundup products in Ohio[4], and Dunn advertised and sold Roundup products in Cuyahoga County, Ohio, and ultimately sold such products to Mr. Kanaga. (Doc. No. 1-2 ¶¶ 9–10.)

Plaintiffs allege that "Roundup and/or glyphosate is defective, dangerous to human health, [and] unfit and unsuitable to be marketed and sold in commerce[.]" (*Id.* ¶ 3.) Specifically, Plaintiffs allege that exposure to Roundup increases the risk of developing cancer. (*See e.g., id.* ¶¶ 97, 109.) Despite these risks, the defendants "failed to appropriately and adequately inform and warn [p]laintiff[s] of the serious and dangerous risks associated with the use of and exposure to glyphosate and/or Roundup[.]" (*Id.* ¶ 111.) Indeed, Mrs. Kanaga avers that Dunn "assured [Mr. Kanaga] that Roundup was a safe weedkiller to use in his business[,]" (Doc. No. 27-1 (Kanaga Aff.) ¶ 3)[5], though Dunn disputes that any such assurances were made. (Doc. No. 24-6 ¶ 9.)

Unaware of Roundup's harmful effects, Mr. Kanaga used Roundup in his business for years, leading to him developing lymphoma in 1984. (Doc. No. 1-2 ¶¶ 7, 23.) Ultimately, Mr. Kanaga died on November 15, 2024. (Doc. No. 1-2 ¶¶ 22, 29.)

---

[4] Monsanto presents evidence that a different entity, The Scotts Company LLC, is the exclusive marketer and distributor of Monsanto's Roundup products in Ohio. (Doc. No. 24-7 (Marketing Agreement).) The Court need not resolve this factual dispute because Scotts has been dismissed from the case, and the identity of Monsanto's exclusive marketer and distributor of Roundup products in Ohio has no effect on the ultimate resolution of the present motion.

[5] The Court recognizes that Mrs. Kanaga does not technically attribute these assurances to Dunn specifically. Rather, she avers "[Mr. Kanaga] purchased Roundup from Dunn Hardware[,] and he purchased the Roundup because [plaintiffs] were assured that Roundup was a safe weedkiller[.]" (Doc. No. 27-1 ¶ 3.) Mrs. Kanaga's use of the passive voice leaves ambiguous who provided the claimed assurances. Nonetheless, because the Court must view the record in the light most favorable to plaintiff, *Walker v. Philip Morris USA, Inc.*, 443 Fed. App'x. 946, 954 (6th Cir. 2011) (unpublished) (citing 16 James W. Moore et al., Moore's Federal Practice—Civil § 107.14[2][c][iv][C]), and resolve disputed issues of fact in plaintiffs' favor, *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999), the Court reads the affidavit to attribute the claimed assurances to Dunn specifically.

**B. Prior Case**

On September 27, 2023, before Mr. Kanaga's death, plaintiffs filed a complaint in this district against Monsanto based on similar allegations. *See* Complaint, *Kanaga v. Monsanto Company*, No. 1:23-cv-1882 (N.D. Ohio Sept. 27, 2023), ECF No. 1. The case was transferred to the Northern District of California as part of a multidistrict litigation, *see* Conditional Transfer Order, *Kanaga v. Monsanto Company*, No. 1:23-cv-1882 (N.D. Ohio October 27, 2023), ECF No. 3, but was ultimately remanded to this district. *See* Conditional Remand Order, *Kanaga v. Monsanto Company*, No. 1:23-cv-1882 (N.D. Ohio July 17, 2024), ECF No. 6.

On remand, the then-assigned judge, Judge James S. Gwin, ordered plaintiffs to file any amended pleadings within thirty days, which plaintiffs failed to do. *See* Order, *Kanaga v. Monsanto Company*, No. 1:23-cv-1882 (N.D. Ohio July 18, 2024), ECF No. 7. The case was reassigned to this Court, Monsanto moved to dismiss, and plaintiffs moved for leave to amend. *See generally Kanaga v. Monsanto Company*, No. 1:23-cv-1882 (N.D. Ohio).

Ultimately, this Court granted the motion to dismiss and denied leave to amend. *See* Memorandum Opinion and Order, *Kanaga v. Monsanto Company*, No. 1:23-cv-1882 (N.D. Ohio Dec. 10, 2024), ECF No. 15. The Court concluded that the then-operative complaint failed to meet federal pleading standards and that the proposed amended complaint failed to adequately allege proximate causation. *Id.* at 4–7. The Court noted that, while it would normally be inclined to dismiss the case with prejudice due to plaintiffs' prior failure to amend, it would dismiss without prejudice due to the case's unusual procedural posture. *Id.* at 8.

4

### C. Present Case

Following Mr. Kanaga's death, plaintiffs filed the present suit in the Cuyahoga County Court of Common Pleas on December 9, 2025. (Doc. No. 1-2, at 40.) This time, the complaint included, not only Monsanto, but also Scotts and Dunn. (*See generally id.*) The complaint asserts seven causes of action under Ohio law against all defendants: (1) negligence and violations of Ohio Rev. Code § 2307, (2) strict products liability for design defect, (3) strict products liability for failure to warn, (4) breach of implied warranties, (5) fraud, (6) supplier liability, and (7) wrongful death. (*Id.* ¶¶ 132–213.) On December 23, 2025, Monsanto removed the case to this Court, arguing that, despite plaintiffs sharing Ohio residency with defendants Scotts and Dunn, this Court has diversity jurisdiction because Scotts and Dunn were fraudulently joined. (Doc. No. 1, at 2–3.)

## II.     LEGAL STANDARD

On a motion to remand, the inquiry is limited to whether the district court lacks subject matter jurisdiction. *Hart v. Gen. Electric Co.*, No. 1:23-cv-12, 2023 WL 6201502, at *1 (S.D. Ohio Sept. 22, 2023) (citing 28 U.S.C. § 1447(c)). The removing party bears the burden of establishing that removal was proper. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006) (citations omitted). Because removal raises significant federalism concerns, federal courts must strictly construe removal statutes. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941).

Monsanto invokes the Court's diversity jurisdiction. (Doc. No. 1, at 3.) Diversity jurisdiction is proper where the amount in controversy exceeds $75,000 and the matter is between citizens of different states. 28 U.S.C. § 1332(a)(1). Generally, diversity jurisdiction requires

*complete diversity* between all plaintiffs and all defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996) (citation omitted).

The doctrine of fraudulent joinder is "an exception to the requirement of complete diversity." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quotation marks and citation omitted).

> To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. [] However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court.

*Coyne*, 183 F.3d at 493 (internal citation omitted). This "colorable basis" analysis is "similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias*, 695 F.3d at 433 (citation omitted).

In conducting this analysis, the Court may "pierce the pleading" and consider extrinsic evidence "for the limited purpose of determining whether there are undisputed facts that negate the claim." *Id.* (quotation marks and citation omitted). Courts agree that, on a motion to remand, the record must be viewed "in the light most favorable to the plaintiff[.]" *Walker*, 443 Fed. App'x. at 954 (quoting 16 James W. Moore et al., Moore's Federal Practice—Civil § 107.14[2][c][iv][C]). "The district court must resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non[-]removing party. [] All doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493 (quotation marks and citations omitted).

## III.    DISCUSSION

The issue before the Court is narrow. Monsanto argues broadly that all claims against Scotts and Dunn lack a colorable basis. (Doc. No. 1, at 2.) But plaintiffs, rather than defending all claims as colorable, elect to solely argue that they have a colorable claim for wrongful death based on product liability against Dunn. (Doc. No. 14, at 2–3; Doc. No. 27, at 2.) Of course, this is a viable strategy as plaintiffs only require a single colorable claim against a single non-diverse defendant to defeat a claim of fraudulent joinder. *See e.g., Patterson v. Husqvarna Pro. Prods., Inc.*, No. 4:23-cv-71, 2024 WL 102942, at *4 (W.D. Ky. Jan. 9, 2024) ("Because there is at least one colorable claim against a non-diverse defendant, the Court need not address other claims against [other non-diverse defendants]."). The single issue before the Court is thus whether plaintiffs have a colorable claim for wrongful death based on product liability against Dunn.

Monsanto attacks the wrongful death claim on two fronts: timeliness[6] and substance. The Court addresses each in turn.

### a.   The Timeliness of the Wrongful Death Claim

Wrongful death claims have a two-year statute of limitations. Ohio Rev. Code § 2125.02(F)(1). Wrongful death claims involving product liability are additionally subject to a statute of repose, which bars claims brought "later than ten years from the date that the product was delivered to its first purchaser[.]" Ohio Rev. Code § 2125.02(F)(2)(a). The statute of repose further contains a savings clause providing that, if the deceased's death occurred less than two

---

[6] Monsanto originally argued that all claims against non-diverse defendants were time-barred. (Doc. No. 1, at 2–3.) Although it is now unclear whether Monsanto persists in this argument with respect to the wrongful death claim against Dunn (*see* Doc. No. 24, at 1 ("[A]ll other claims against the [non-diverse] [d]efendants are time-barred. . . . [T]he wrongful death claim against the [non-diverse] [d]efendants is not colorable even if [p]laintiff's statute-of-limitations argument is accepted.")), the Court will presume Monsanto persists out of an abundance of caution.

7

years before the expiration of the ten-year repose period, a wrongful death claim may be brought within two years of the death. Ohio Rev. Code § 2125.02(F)(2)(d).

The Court is unable to locate any Ohio Supreme Court or Sixth Circuit precedent specifically addressing § 2125.02(F)(2)'s application to a "repeat customer" situation. In other words, the Court can find no binding (nor persuasive) authority addressing whether the repose period under § 2125.02(F)(2) begins to run at the first of a series of purchases or the last. But the Court need not resolve this ambiguity now. Because the Court "must resolve all . . . ambiguities in the controlling . . . state law in favor of the non[-]removing party[,]" *Coyne*, 183 F.3d at 493 (quotation marks and citations omitted), and because repose periods are generally understood to run "from the date of the last culpable act or omission of the defendant[,]" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 801, 144 S. Ct. 2440, 219 L. Ed. 2d 1139 (2024) (citation omitted), the Court can presume, for purposes of this analysis, that the repose period runs from the last of a series of purchases.

As applied here, plaintiffs' wrongful death claim is timely. Reading the complaint in the light most favorable to plaintiffs, Mr. Kanaga last purchased Roundup from Dunn in 2015. (*See* Doc. No. 1-2 ¶¶ 10, 23.) For purposes of this analysis, the repose period thus ran from 2015 to 2025. Ohio Rev. Code § 2125.02(F)(2)(a). Mr. Kanaga died on November 15, 2024 (Doc. No. 1-2 ¶ 29), less than two years from the end of the repose period. Thus, under § 2125.02(F)(2)(d), plaintiffs had until November 15, 2026, to file their claim. The present suit was filed on December 9, 2025. (*Id.* at 40.) The wrongful death claim is not time-barred for purposes of this analysis.

8

### b. The Substance of the Wrongful Death Claim

In Ohio, claims for wrongful death must be premised on a death caused by some conduct which would have entitled the deceased to a cause of action had they not died. Ohio Rev. Code § 2125.01. In other words, "a wrongful death claim must be predicated upon a separate tort." *Beyoglides v. Montgomery Cnty. Sheriff*, No. 3:14-cv-158, 2016 WL 8669789, at *1 (S.D. Ohio Aug. 12, 2016) (citation omitted). Plaintiffs predicate their wrongful death claim on a claim for supplier liability under Ohio Rev. Code § 2307.78(A). (Doc. No. 27, at 2.)

Under Ohio Rev. Code § 2307.78(A), a supplier can be liable on a theory of negligence under Ohio Rev. Code § 2307.78(A)(1) or a theory of failure-to-conform under Ohio Rev. Code § 2307.78(A)(2). Because the parties do not contest that Dunn is a "supplier" for purposes of § 2307.78, the issue is whether plaintiffs set forth a colorable claim under one or both of these theories.

### i. Negligence Under Ohio Rev. Code § 2307.78(A)(1)

Under § 2307.78(A)(1), a supplier is liable if it "was negligent and [the] negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages[.]" Ohio Rev. Code § 2307.78(A)(1). As relevant here, "[u]nder [Ohio Rev. Code] § 2307.78(A)(1), a supplier can be liable for negligence if it knew or had reason to know of [a] product defect and failed to provide a warning of the defect." *Brentar v. Ford Motor Co.*, No. 09-cv-2685, 2010 WL 3210955, at *7 (N.D. Ohio Aug. 10, 2010) (quotation marks and citation omitted).

Viewing the record in the light most favorable to plaintiffs, there is a colorable § 2307.78(A)(1) claim here. Plaintiffs allege that defendants, including Dunn, "knew or should have known that[:] Roundup is more toxic than glyphosate alone" (Doc. No. 1-2 ¶ 73); "glyphosate is

9

associated with an increased risk of developing cancer" (*id.* ¶ 110); "Roundup created a high risk of unreasonable, dangerous side effects" (*id.* ¶ 134); and "Roundup was in a defective condition and was and is inherently dangerous and unsafe." (*Id.* ¶ 150.) Plaintiffs allege that defendants, including Dunn, "failed to appropriately and adequately inform and warn [p]laintiff[s] of the serious and dangerous risks associated with the use of and exposure to glyphosate and/or Roundup[.]" (*Id.* ¶ 111.) Finally, plaintiffs allege that Mr. Kanaga purchased and was exposed to Roundup, resulting in his lymphoma and eventual death. (*Id.* ¶¶ 7, 10, 21–23, 29.) These allegations provide a colorable basis for predicting that plaintiffs may recover against Dunn under § 2307.78(A)(1). *See Detnerski v. Biomet Orthopedics, LLC*, No. 1:13-cv-2412, 2013 WL 12137143, at *2 (N.D. Ohio Dec. 23, 2013) (finding colorable § 2307.78(A)(1) claim where plaintiff alleged that defendants "'knew or, in the exercise of reasonable care, should have known' of the design and manufacturing defects[]" that allegedly caused plaintiff's injury); *Brentar*, 2010 WL 3210955, at *8 (finding colorable § 2307.78(A)(1) claim where plaintiff submitted declaration alleging defendant had reason to know of product defect that allegedly caused plaintiff's injury).

Monsanto resists this conclusion with various arguments, all of which are unavailing. First, Monsanto argues that plaintiffs' allegations of knowledge are "too conclusory to be credited[.]" (Doc. No. 24, at 12.) This argument is better presented on a motion to dismiss—not on a motion to remand. *See Markins v. S.W. Airlines Co.*, No. 5:17-cv-793, 2017 WL 4050195, at *3 (N.D. Ohio Sept. 13, 2017) ("Even if the original [c]omplaint is too vague or conclusory to withstand a motion to dismiss on remand, the sufficiency of the [c]omplaint faces a higher threshold than does the establishment of a colorable cause of action under the removal statute."); *Thompson v. Medtronic, Inc.*, No. 3:12-cv-456, 2012 WL 5362844, at *3 (W.D. Ky. Oct. 31, 2012) ("While the

. . . [d]efendants classify these allegations as 'conclusory and boilerplate' . . . , the appropriate inquiry in this case is not whether [p]laintiff will ultimately lose on the merits; rather, it is simply whether [p]laintiff has 'at least a colorable cause of action against [defendant] in the . . . state courts.'" (citation omitted)). As the case law cited above indicates, *Detnerski*, 2013 WL 12137143, at *2; *Brentar*, 2010 WL 3210955, at *8, allegations like those presented by plaintiffs are sufficient under the colorable basis analysis.

Second, Monsanto presents a declaration from Dunn's sole member stating that Dunn never knew or had the resources or expertise to discover any defects in Roundup. (Doc. No. 24-6 ¶ 10.) Monsanto argues that this declaration "foreclose[s]" plaintiffs' negligence theory. (Doc. No. 24, at 12.) But one cannot foreclose the possibility of a colorable claim by merely refuting the complaint's allegations via affidavit or declaration. *See Brentar*, 2010 WL 3210955, at *9 (collecting cases); *see also Humana, Inc. v. Lundbeck, Inc.*, No. 3:23-cv-348, 2023 WL 8085846, at *3 (W.D. Ky. Nov. 21, 2023) ("But this affidavit is not an 'undisputed fact' that the Court may rely on to 'pierce the pleading[]' . . . [because the] complaint directly disputes [it][.]" (quoting *Casias*, 695 F.3d at 433)). To hold otherwise would require the Court to weigh the credibility of the declaration against the credibility of the complaint, which this Court cannot do at this stage. *Brentar*, 2010 WL 3210955, at *9 ("At this preliminary stage, the Court is reluctant to find that [the] affidavit forecloses any reasonable basis for [defendant's] liability, particularly since the Court, in making its fraudulent[] joinder inquiry, must not make credibility determinations or make findings on the ultimate issues of fact." (quotation marks and citation omitted)); *cf. Eckhart v. Depuy Orthopaedics, Inc.*, No. 2:03-cv-1063, 2004 WL 524916, at *5 (S.D. Ohio 2004) ("[W]here there is a reasonable possibility that those factual allegations state a claim under state law—*even*

11

*when the truth of those allegations is challenged*—fraudulent joinder cannot be shown[.]" (citation omitted) (emphasis added)).

Relatedly, Monsanto insists that, in the face of its declaration, plaintiffs "may not rest on the pleadings[,]" relying on *Hall v. OrthoMidwest, Inc.*, 541 F. Supp. 3d 802, 809 (N.D. Ohio 2021) for that proposition. (Doc. No. 24, at 12.) But *Hall* appears to incorrectly import this rule from the summary judgment standard. *See Hall*, 541 F. Supp. 3d at 809 (treating "fraudulent joinder as akin to a summary-judgment proceeding" and stating that "[o]n a motion for summary judgment, a non-moving party may not rest on the pleadings[.]"). While courts may use a "summary judgment-like procedure" to consider extrinsic evidence, *King v. Centerpulse Orthopedics, Inc.*, No. 1:05-cv-1318, 2006 WL 456478, at *1 (N.D. Ohio Feb. 24, 2006) (citations omitted), "[s]ummary judgment standards do not apply to [the fraudulent joinder analysis]." *Sprowls v. Oakwood Mobile Homes, Inc.*, 119 F. Supp. 2d 694, 697 (W.D. Ky. 2000); *see also Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 407 (6th Cir. 2007) (unpublished) (approvingly citing *Sprowls* as type of fraudulent joinder analysis district court should have undertaken). Indeed, multiple district courts within the Sixth Circuit reject use of the summary judgment standard in analyzing fraudulent joinder issues.[7] So long as the complaint states a colorable claim, plaintiffs need not answer summary evidence with summary evidence. *See Castle v. 3M Co.*, 664 F. Supp. 3d 770, 776 (E.D. Ky. 2023) (rejecting "that [p]laintiffs must also present

---

[7] *See Brentar*, 2010 WL 3210955, at *4 (accepting plaintiff's argument that "courts are permitted to look at 'summary judgment like' evidence, including affidavits, but that the standard for fraudulent joinder is not the same as the summary judgment standard"); *Shawver v. Bombardier Recreational Prods., Inc.*, No. 3:12-cv-843, 2013 WL 1767945, at *4 (W.D. Ky. Apr. 23, 2013) ("That [summary judgment standard] is not the appropriate standard for a fraudulent joinder analysis."); *Eckhart*, 2004 WL 524916, at *5 ("[T]his Court agrees that it is inappropriate to apply a summary judgment standard to a claim of fraudulent joinder, because the merits of an action are distinct from the jurisdictional issues presented by such a claim." (quotation marks and citation omitted)).

12

factual evidence from discovery . . . to avoid a finding of fraudulent joinder" where "the allegations in the [c]omplaint . . . provide the basis for [p]laintiffs' claims."); *Hauck v. ConocoPhillips Co.*, No. 06-cv-135, 2006 WL 1596826, at \*5 n.4 (S.D. Ill. June 6, 2006) ("Importantly, a removing defendant's submission of summary evidence in support of a claim of fraudulent joinder does not impose on a plaintiff a burden to submit summary evidence of his or her own to disprove fraudulent joinder." (collecting cases)).

Finally, Monsanto presents evidence that Dunn did not exist before 2012 (Doc. No. 24-6, at 4–13 (attaching certificates and articles of organization purporting to show Dunn's creation in 2012)) and argues that plaintiffs will resultantly be unable to prove that Dunn caused Mr. Kanaga's lymphoma in 1984. (Doc. No. 24, at 14.) Pointing to a Cleveland.com article, plaintiffs counter that Dunn has existed since the early-to-mid 1900s. (*See* Doc. No. 27-2 (Cleveland.com Article), at 2 (noting Dunn's origins "date back to 1910").

But the Court need not enter the fray on this factual and evidentiary issue because, even if this Court were to accept that Dunn did not exist until 2012, it would not foreclose a colorable claim under § 2307.78(A). The complaint indicates that Mr. Kanaga may have purchased Roundup from Dunn as late as 2015. (*See* Doc. No. 1-2 ¶¶ 10, 23.) While Monsanto's evidence may foreclose the possibility that Dunn caused Mr. Kanaga's lymphoma in 1984, it does not foreclose the possibility that Dunn contributed to Mr. Kanaga's death by selling him Roundup while failing to warn of a known risk between 2012 and 2015. Such a contribution theory is viable under § 2307.78(A). *See Simmons v. Dollar Gen.*, No. 4:22-cv-221, 2022 WL 17669397, at \*2 (N.D. Ohio Dec. 14, 2022) ("Liability under [§ 2307.78(A)(1–2)] requires active conduct by the supplier that causes *or contributes to* the injury." (emphasis added) (citation omitted)), *aff'd sub nom. Simmons*

13

*v. Dollar Gen. Corp.*, No. 23-3053, 2023 WL 9324807 (6th Cir. Oct. 5, 2023).

Plaintiffs sufficiently establish that, had Mr. Kanaga not died, he would have a colorable claim against Dunn under Ohio Rev. Code § 2307.78(A)(1). Resultantly, plaintiffs set forth a colorable basis for predicting that they may recover from non-diverse defendant Dunn on their wrongful death claim. *Cf. Cooper v. Longwood Forest Products, Inc.*, No. 2:20-cv-3332, 2022 WL 16848366, at *3 (S.D. Ohio Nov. 10, 2022) ("Thus, because [d]efendant is liable under [§ 2307.78(A)] . . . , [d]efendant is liable under [the] Ohio wrongful death statute because [the deceased] would have had a claim under [§ 2307.78(A)] had he not died[.]"). While the Court could end its analysis here, out of an abundance of caution, the Court also analyzes plaintiffs' wrongful death claim under Ohio Rev. Code § 2307.78(A)(2).

### ii.  *Failure-to-Conform Under Ohio Rev. Code § 2307.78(A)(2)*

Under § 2307.78(A)(2), a supplier is liable if "[t]he product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages." Ohio Rev. Code § 2307.78(A)(2).

Viewing the record in the light most favorable to plaintiffs, plaintiffs set forth a colorable § 2307.78(A)(2) claim. Mrs. Kanaga's affidavit suggests that Dunn made representations that "Roundup was a safe weedkiller[,]" and that Mr. Kanaga purchased Roundup because of such representations. (Doc. No. 27-1 ¶ 3.) The complaint alleges that Roundup was not, in fact, a safe weedkiller because it increased the likelihood of developing cancer (*see e.g.,* Doc. No. 1-2 ¶¶ 3, 97, 109), and that Mr. Kanaga's exposure to Roundup caused his lymphoma and eventual death. (*Id.* ¶¶ 7, 22–23, 27–29, 124.) These averments and allegations provide a colorable basis for

14

predicting plaintiffs may recover from Dunn under § 2307.78(A)(2). *See Brentar*, 2010 WL 3210955, at *9 (finding colorable basis for § 2307.78(A)(2) claim where complaint alleged "[defendant] made a representation to which the [product] failed to conform when it left [defendant]'s control"); *Lincoln v. Watcon, Inc.*, No. 3:17-cv-181, 2018 WL 932036, at *6 (N.D. Ohio Feb. 16, 2018) (same (citing *Brentar*, 2010 WL 3210955, at *9)).

Monsanto's arguments to the contrary are unavailing. First, Monsanto argues that plaintiffs failed to plead a failure-to-conform theory and that such failure "precludes its consideration." (Doc. No. 24, at 13 (citing *King*, 2006 WL 456478, at *5).) *King* is distinguishable. In *King*, the court found no colorable § 2307.78(A)(2) claim where the plaintiff failed to allege *and failed to provide evidence* that the defendant made any kind of express representation. *King*, 2006 WL 456478, at *5. Here, plaintiffs, while failing to allege any representation, at least provide evidence of such a representation in Mrs. Kanaga's affidavit. (Doc. No. 27-1 ¶ 3 (Mr. Kanaga "purchased the Roundup because [plaintiffs] were assured that Roundup was a safe weedkiller")). The Court may consider affidavits on a motion to remand. *See Casias*, 695 F.3d at 433. As discussed above, the combination of Mrs. Kanaga's affidavit and the complaint present a colorable claim under § 2307.78(A)(2).

Second, Monsanto argues that Dunn's averment that it never made any representation regarding Roundup (Doc. No. 24-6 ¶¶ 8–9) forecloses the possibility of a colorable claim under § 2307.78(A)(2). (Doc. No. 24, at 13–14.) Considering Mrs. Kanaga's affidavit to the contrary (Doc. No. 27-1), the record, again, raises a "disputed question[] of fact" which this Court must resolve "in favor of the non[-]removing party." *Coyne*, 183 F.3d at 493 (citations omitted).[8]

---

[8] Monsanto's case law on this point (Doc. No. 24, at 14) is readily distinguishable. In each case cited, the plaintiff

15

Plaintiffs sufficiently establish that, had Mr. Kanaga not died, he would have a colorable claim against Dunn under Ohio Rev. Code § 2307.78(A)(2).[9] Resultantly, plaintiffs set forth a colorable basis for predicting that they may recover from non-diverse defendant Dunn on their wrongful death claim. *Cf. Cooper*, 2022 WL 16848366, at *3 ("Thus, because [d]efendant is liable under [§ 2307.78(A)] . . . , [d]efendant is liable under [the] Ohio wrongful death statute because [the deceased] would have had a claim under [§ 2307.78(A)] had he not died[.]").

* * *

Plaintiffs set forth a colorable claim for wrongful death by way of Ohio Rev. Code §§ 2307.78(A)(1) and 2307.78(A)(2) against non-diverse defendant Dunn. Dunn is thus not fraudulently joined, and its presence in this case defeats diversity jurisdiction. Because Monsanto's sole basis for removal is diversity jurisdiction, this conclusion requires remand to state court. *See Coyne*, 183 F.3d at 493.

---

failed to allege or provide evidence of a representation made by the non-diverse defendant. *See Makoski v. Zimmer Holdings, Inc.*, 538 F. Supp. 3d 757, 762 (N.D. Ohio 2021) (finding no colorable § 2307.78(A)(2) claim where "[p]laintiff . . . failed to point to any representation the . . . [d]efendants made"); *Hall*, 541 F. Supp. 3d at 811 (finding no colorable § 2307.78(A)(2) claim where plaintiff failed to clarify whether diverse or non-diverse defendant made representation); *Chamberlain v. Am. Tobacco Co., Inc.*, 70 F. Supp. 2d 788, 797–98 (N.D. Ohio 1999) (finding no arguable § 2307.78(A)(2) claim where "[p]laintiffs do not dispute defendants' assertions that the Ohio defendants made no representations"). Here, on the other hand, plaintiffs provide an affidavit at least suggesting Dunn made a representation. (Doc. No. 27-1.)

[9] To the extent Monsanto reiterates its argument that plaintiffs cannot set forth a colorable basis for causation because Dunn did not exist until 2012 (Doc. No 24, at 14), the Court rejects the argument for the same reason it rejected it under the § 2307.78(A)(1) analysis. (*See supra* § III(b)(i).)

## IV.    CONCLUSION

This Court lacks subject matter jurisdiction over this action. Accordingly, plaintiffs' motion to remand (Doc. No. 14) is GRANTED, and this case is REMANDED to the Cuyahoga County Court of Common Pleas.

**IT IS SO ORDERED**.


Dated: June 12, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**